1

2

3

4

5    UNITED STATES DISTRICT COURT

6    EASTERN DISTRICT OF WASHINGTON

7    VERNON N. FANNIN,

8                        Plaintiff,

9         v.

10   LINDA SMITH, et al.,

11                       Defendants.

| | |
|---|---|
| NO:  4:14-CV-5091-TOR | |
| ORDER GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT | |

12

13        BEFORE THE COURT are Plaintiff's Motion for Summary Judgment (ECF

14   No. 6) and Defendants' Response to Plaintiff's Motion for Summary Judgment and

15   Cross-Motion for Summary Judgment (ECF No. 9).  This matter was submitted for

16   consideration without oral argument.  Plaintiff is proceeding *pro se*, but not *in*

17   *forma pauperis* in this Court.  Defendants are represented by Joseph T. Edwards.

18   The Court has reviewed the briefing and the record and files herein, and is fully

19   informed.

20   *//*

ORDER GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY
JUDGMENT ~ 1

**BACKGROUND**

On July 29, 2014, Plaintiff filed a complaint in Franklin County Superior Court alleging that Defendants had violated his civil rights.  ECF No. 2-1.  Plaintiff served Defendants with the complaint on August 19, 2014.  ECF No. 1.  The case was removed to this Court on September 4, 2014.  *Id.*  Plaintiff filed a motion for summary judgment on February 20, 2015.  ECF No. 6.  Defendants responded to that motion and filed a cross-motion for summary judgment on March 12, 2015.  ECF No. 9.  For the reasons discussed below, the Court grants Defendants' motion.

**STANDARD OF REVIEW**

Summary judgment may be granted to a moving party who demonstrates "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of demonstrating the absence of any genuine issues of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The burden then shifts to the non-moving party to identify specific genuine issues of material fact which must be decided by a jury.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  *Id.* at 252.

For purposes of summary judgment, a fact is "material" if it might affect the outcome of the suit under the governing law. *Id.* at 248. A dispute concerning any such fact is "genuine" only where the evidence is such that a reasonable jury could find in favor of the non-moving party. *Id.* In ruling upon a summary judgment motion, a court must construe the facts, as well as all rational inferences therefrom, in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). Only evidence which would be admissible at trial may be considered. *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002).

## FACTS[1]

On September 26, 2013, Plaintiff, an inmate at the Coyote Ridge Corrections Center ("CRCC"), began working in the Correctional Industries Laundry ("Laundry"). ECF No. 14 at ¶ 4 (Linda Smith declaration). Defendant Linda Smith, a correctional officer, was assigned to the Laundry to supervise offenders working there. *Id.* at ¶ 2. While updating the photo book of offenders assigned to the Laundry, Linda Smith noticed a number of offenders with the last name of Fannin. *Id.* at ¶ 4. Linda Smith mentioned this to Plaintiff, who told her that the only incarcerated Fannin he knew was his cousin, Jeremy Fannin. *Id.*

Linda Smith became concerned when Plaintiff mentioned this because her son had recently been convicted of committing a crime with two other men, Evan

[1] The following are the undisputed material facts unless otherwise noted.

ORDER GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT ~ 3

Daly and Jeremy Fannin.  *Id.* at ¶ 5.  These two individuals were good friends with

her son, had visited her home, and knew about Linda Smith's family.  *Id.*  Linda

Smith "looked up Jeremy Fannin and confirmed he was the same person" who had

committed the crime with her son.  *Id.*  Linda Smith then reported the information

to Chuck Hudgins, General Manager of Correctional Industries; Doug Tucker,

another Correctional Industries staff member; and Defendant Randall Smith, a

Correctional Industries sergeant.  *Id.* at ¶ 6.  Linda Smith did not take any further

action at the time because she believed that Plaintiff did not know who Linda

Smith was or of her connection to Plaintiff's cousin as Linda Smith's son had a

different last name.  *Id.*

In December 2013, Linda Smith became aware that Evan Daly was

scheduled for transfer to the CRCC.  *Id.* at ¶ 7.  Because of the personal

relationship between Daly and her son, Linda Smith completed a Report of

Contact/Relationship with an Offender form detailing that relationship.  *Id.*  Daly's

transfer was cancelled because of this information.  ECF Nos. 14 at ¶ 11; 21 at

¶¶ 15, 16.

On January 13, 2014, Plaintiff was working in the Laundry and requested to

leave early because his aunt was visiting.  ECF Nos. 14 at ¶ 8; 12-5 (log entry from

"1-13-14" stating "1040 I/M Fannin back to unit for visit").  That same day,

Plaintiff overheard Linda Smith tell another inmate, that "she was close to kicking

his ass" [that other inmate's] and that "her foot was going to be so far up his ass that he would have to get her shoe removed from his ass." ECF Nos. 8-1 at 6 (Plaintiff's statement to the administrative appeal board); 13-2 (Plaintiff's January 27, 2014, kite). Plaintiff told a counselor and Sergeant "Todd"[2] about this incident the following day, January 14, 2014. ECF Nos. 8-1 at 6; 13-2. Sergeant Todd told Plaintiff not to file a grievance and to first give him a chance to handle the matter. ECF Nos. 8-1 at 6; 13-2. The next day, Plaintiff overheard Linda Smith tell another inmate, she "knew what [Plaintiff] did" and that "if [Plaintiff] has anything to say to her that [Plaintiff] should go talk to her." ECF No. 8-1 at 6–7. Plaintiff later heard from other inmates that Linda Smith was angry and had told the inmates that Plaintiff "better watch out." *Id.* at 7.[3]

On January 17, 2014, Plaintiff met with Sergeant Randall Smith to discuss the matter. ECF Nos. 8-1 at 7; 21 at ¶ 10.[4] Plaintiff provided Randall Smith with

_____

[2] No further identification is provided for this individual.

[3] Linda Smith denies threatening Plaintiff. ECF No. 14 at ¶ 14. For the purpose of this summary judgment motion, the Court must assume Linda Smith engaged in the conduct asserted by Plaintiff.

[4] Randall Smith states he became aware of Plaintiff's complaints on January 14, 2014, and spoke with him that same day. ECF No. 21 at ¶ 10. In the light most

ORDER GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT ~ 5

the names of the other offenders present when the statements were made. ECF No. 21 at ¶ 10. Randall Smith told Plaintiff that he would investigate the matter and get back to Plaintiff after he had completed his investigation. ECF Nos. 8-1 at 6; 21 at ¶ 10.

Over the next few days, Randall Smith interviewed the three offenders present. ECF No. 21 at ¶ 11. None of them could remember exactly what Linda Smith had said, but they "indicated it was possible she made an inappropriate comment in a joking manner." *Id.* Randall Smith also interviewed Linda Smith who indicated that she remembered joking with a group of offenders at lunch the week prior, but could not remember exactly what she said. *Id.* at ¶ 12.

That the timing of Plaintiff's complaint coincided with his aunt's visit suggested to Linda Smith that Plaintiff may have discovered the connection between his cousin and Linda Smith's son. ECF No. 14 at ¶ 10. She worried that Plaintiff may have learned of the connection when he heard other inmates call her by her former last name, the one that her son uses, or that Plaintiff's aunt may have told Plaintiff about the contact report that had cancelled Jeremy Fannin's transfer to CRCC. *Id.* at ¶¶ 10–11. Linda Smith became concerned that this information

---

favorable to Plaintiff, the Court assumes for purposes of this motion that the conversation occurred on January 17, not on January 14.

ORDER GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT ~ 6

may jeopardize her safety and that of her son.  *Id.* at ¶ 12.  Linda Smith expressed these concerns to Randall Smith.  ECF Nos. 14 at ¶¶ 11, 12; 21 at ¶ 15.

On January 24, 2014, Randall Smith told Plaintiff that he had confirmed that Linda Smith made inappropriate comments on January 13 and that the matter had been resolved.  ECF Nos. 6 at 5; 8-1 at 7–8; 21 at ¶ 14.  Based upon his investigation, Randall Smith concluded that Linda Smith made the comments in jest, not intending them to be threatening.  *Id.* at ¶ 13.  Randall Smith wrote a formal letter to Linda Smith recording that he spoke with her about "bantering with the offenders" and expressed that she "should always set an example of professionalism . . . .  Future incidents of this kind may lead to further corrective action."  ECF Nos. 8-1 at 11; 12-4.  A copy of the letter was placed in Linda Smith's employee file.  ECF Nos. 8-1 at 11; 12-4; 21 at ¶ 13.

On January 24, 2014, when Randall Smith discussed the formal letter with Linda Smith, she raised concerns about Plaintiff's possible knowledge of the connection between his cousin and Linda Smith's son.  Randall Smith looked into the matter.  ECF No. 21 at ¶ 16.  He concluded that, while he did not know whether Plaintiff had personal information about Linda Smith, "due to the serious safety and security concerns that would be present if [Plaintiff] knew personal information about [Linda Smith], [he] decided it would be best for the safety and security of [Linda Smith] and the facility that [Plaintiff] not work in the same area

ORDER GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT ~ 7

as her." *Id.* at ¶ 17.  Randall Smith also concluded that removing Plaintiff from the Laundry would make it less likely that he would make the connection between his cousin and Linda Smith's son or find out personal information about Linda Smith if he had not already done so.  *Id.*

On January 27, 2014, Plaintiff was informed that he had been unassigned from his Laundry employment.  ECF Nos. 8-1 at 8; 12-6.  Plaintiff appealed that decision to the Termination/Appeal Review Panel, indicating that he believed he was unassigned as punishment for complaining about Linda Smith.  ECF Nos. 13 at ¶ 5; 13-1; 13-2.  Defendant Michelle Duncan, a Correctional Program Manager, oversees and sits on the appeal panel.  ECF No. 13 at ¶ 2.

On February 3, 2014, the panel held a meeting and requested Randall Smith address the panel's concerns about Plaintiff being unassigned from the Laundry. ECF No. 13 at ¶ 7.  Randall Smith told the panel about the possibility that Plaintiff had personal information regarding Linda Smith.  ECF nos. 13 at ¶ 7; 21 at ¶ 21. In light of that information, the panel upheld the decision to unassign Plaintiff from the Laundry.  ECF Nos. 13 at ¶ 7; 13-3.

Duncan informed Plaintiff that the decision to unassign him from the Laundry was independent of the incident involving Linda Smith.  ECF Nos. 13 at ¶ 10; 13-4 at 8; 13-5.  Duncan also informed Plaintiff that he remained eligible for employment and encouraged him to work with his classification counselor to

ORDER GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT ~ 8

1  obtain a new job referral in another area.  ECF Nos. 13 at ¶ 10; 13-4 at 8; 13-5.  On

2  February 24, 2014, Randall Smith received a new work application from Plaintiff

3  and Plaintiff was hired thereafter to work in the Textiles area at the same rate of

4  pay he had at the Laundry.  ECF Nos. 12-7; 21 at ¶ 23.

5        At the February meeting, the appeals panel directed Randall Smith to have

6  Linda Smith complete a Report of Contact/Relationship with an Offender form and

7  submit it to the Superintendent for determination of what further action may to be

8  needed regarding Plaintiff's potential knowledge of Linda Smith's personal

9  information.  ECF No. 13 at ¶ 9; 21 at ¶ 21.  Linda Smith submitted a Report of

10  Contact form on February 3, 2014, but upon review Randall Smith sent it back to

11  Linda Smith to revise and to include additional information.  ECF Nos. 14 at ¶ 13;

12  21 at ¶¶ 21–22.  The revised form was received on February 20, 2014.  ECF Nos.

13  14 at ¶ 13; 21 at ¶ 22.  Randall Smith noted on the form that "[a]fter being

14  informed of the connection between [Plaintiff] and Jeremy Fannin and the personal

15  information know by Jeremy Fannin regarding Officer Smith's home and family, I

16  do believe this offender could create a serious problem for her working in the same

17  area."  ECF No. 13-7.  The form was sent to the Superintendent for a decision on

18  how to proceed.  ECF Nos. 21 at ¶ 22.  On February 21, 2014, Superintendent Jeff

19  Uttecht signed the form and directed:  "create facility separatee for [Plaintiff]."

20  ECF No. 13-7.

ORDER GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY
JUDGMENT ~ 9

For an unknown reason, Duncan did not receive the document until August 19, 2014.  ECF No. 13 at ¶ 13.  At that time, she discussed the matter with Superintendent Uttecht who reaffirmed the decision to enter a facility separatee and to request that Plaintiff be transferred to another correctional facility.  *Id.*  On August 21, 2014, after entering these documents, Duncan was informed by other corrections personnel that Plaintiff was discussing and sharing documents from this lawsuit with other inmates.  ECF No. 13 at ¶ 14.  These documents may have included the Report of Contact form that Linda Smith had completed which identified her son's relationship to Plaintiff's cousin.  *See* ECF No. 21 at ¶ 24 (Plaintiff told Randall Smith in June 2014 that he had obtained a copy of the report).  After discussing the matter with Superintendent Uttecht, Duncan placed Plaintiff in segregation until his transfer occurred the following week.  ECF No. 13 at ¶ 14.

## DISCUSSION

Plaintiff asserts, pursuant to 42 U.S.C. § 1983, that Defendants have violated his civil rights by unlawfully retaliating against him for complaining about statements made by Linda Smith.  Specifically, Plaintiff contends the Defendants retaliated against him by (1) removing Plaintiff from his employment in the Laundry, (2) ordering that Plaintiff be transferred to a different correctional facility, and (3) placing Plaintiff in segregation.

ORDER GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT ~ 10

To establish a § 1983 claim, a claimant must prove "(1) that a person acting under color of state law committed the conduct at issue, and (2) that the conduct deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States." *Leer v. Murphy*, 844 F.2d 628, 632–33 (9th Cir. 1988). A person deprives another "of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that 'causes' the deprivation of which [the plaintiff complains]." *Id.* at 633 (brackets in the original) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)).

The parties do not dispute that Defendants were acting under color of state law. The Court therefore turns its attention to whether Defendants committed an act or participated in an act that deprived Plaintiff of some federal right, privilege, or immunity.

"Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so." *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012). "[A] viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."

ORDER GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT ~ 11

1    *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005) (citing *Resnick v.*

2    *Hayes*, 213 F.3d 443, 449 (9th Cir. 2000) and *Barnett v. Centoni*, 31 F.3d 813,

3    815–16 (9th Cir. 1994)).

4          Defendants raise a defense based upon Plaintiff's failure to carry his burden

5    on three of the above elements.  First, Defendants contend that none of the named

6    Defendants acted adversely to Plaintiff in his segregation or transfer to another

7    correctional facility because those decisions were made by Superintendent Uttecht.

8    ECF No. 9 at 11–12.  Second, Defendants contend that Plaintiff has failed to

9    establish that the actions undertaken were in order to retaliate against Plaintiff for

10    the complaint he made regarding Defendant Linda Smith.  ECF No. 9 at 8–13.

11    Third, Defendants contend that Plaintiff has failed to show the absence of

12    legitimate penological interests in the actions undertaken.  ECF No. 9 at 9–10.  The

13    Court construes Defendants' cross-motion to concede that Plaintiff engaged in

14    protected conduct by making a verbal complaint and that the adverse actions

15    chilled Plaintiff's exercise of his First Amendment rights.  The Court reviews each

16    of Defendants' contentions in turn.

17    A. Adverse Action

18          To succeed in his claim, Plaintiff must show that Defendants took adverse

19    action against him.  *Watison*, 668 F.3d at 1114.  Plaintiff contends that the adverse

20    actions in this case were his unassignment from the Laundry, his transfer to

ORDER GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY
JUDGMENT ~ 12

another correctional facility, and his segregation for a week before the transfer. ECF No. 6 at 3, 5, 7. The Court must therefore inquire whether the record, taken in the light most favorable to the Plaintiff, contains evidence from which a reasonable factfinder could conclude that the named Defendants, acting on their own or in concert with others, engaged in any of these adverse activities. *See Brodheim v. Cry*, 584 F.3d 1262, 1270 (9th Cir. 2009) (quoting *Okwedy v. Molinari*, 333 F.3d 339, 343 (2d Cir. 2003) (per curiam)).

Defendants contend that Plaintiff has not established sufficient facts to demonstrate that Defendant Linda Smith acted adversely to Plaintiff because Defendant Linda Smith did not make the actual decision to unassign Plaintiff from the Laundry. ECF Nos. 23 at 4. Likewise, Defendants contend that none of the named Defendants acted adversely to Plaintiff in his transfer and segregation because those actual decisions were made by Superintendent Uttecht. ECF No. 9 at 11–13.

However, it is not necessary that a defendant make the actual decision that adversely affects a plaintiff in order to establish liability. The Ninth Circuit has recognized that a subordinate's liability in the § 1983 context can be established not only "by some kind of direct personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." *Gilbrook v.*

ORDER GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT ~ 13

*City of Westminster*, 177 F.3d 839, 854 (9th Cir. 1999).  Likewise, the Ninth

Circuit has recognized liability in Title VII retaliation cases where "a subordinate,

in response to a plaintiff's protected activity, sets in motion a proceeding by an

independent decision maker that leads to an adverse employment action," or where

the "biased subordinate influenced or was involved in the decision or

decisionmaking process."  *Poland v. Chertoff*, 494 F.3d 1174, 1182 (9th Cir.

2007).  Defendants can defeat such "cat's paw"[5] theory of liability by showing that

the adverse action was "the consequence of an entirely independent investigation."

*Id.* at 1183.

In this light, Plaintiff could establish that Defendant Linda Smith acted

adversely against him by showing that she set his unassignment in motion by

complaining of his potential relationship to her son knowing—or that she should

reasonably have known—that this would cause others to engage in the adverse

action against him.  Similarly, viewing the facts in the light most favorable to

Plaintiff, he may be able to establish that the named Defendants acted adversely to

him in his transfer and segregation if he can show they influenced or were involved

---

[5] *See Poland*, 494 F.3d at 1182 n.5, for citation to "a discussion of the etymology

and acceptation" of this term.

ORDER GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY
JUDGMENT ~ 14

1  with those decisions, or set those events in motion knowing what the likely result

2  would be.

3                                    B.  Causation

4          However, in order for these claims to survive summary judgment, Plaintiff

5  must also show "a causal connection between the adverse action and the protected

6  conduct."  *Watison*, 668 F.3d at 1114.  In arguing causation, Plaintiff points to the

7  fact that his unassignment from the Laundry occurred only a week after he

8  complained about Defendant Linda Smith.  ECF No. 6 at 5.  Plaintiff also points

9  out that his transfer was ordered on August 21, 2014, two days after this lawsuit

10 was served on Defendants.  ECF No. 22 at 6.  Plaintiff argues:

11          Retaliatory motive may be shown by the timing of the allegedly
            retaliatory act and inconsistency with previous actions, as well as
12          direct evidence.  Bruce v. Ylst, 351 F.3d 1283, 1288-1289 (9th Cir.
            2003).  When an adverse action occurs shortly after the protected
13          conduct, the 9th Circuit has held that the timing creates an inference
            of retaliatory motive.
14

15 ECF No. 6 at 5.

16          Certainly, "timing can properly be considered as circumstantial evidence of

17 retaliatory intent."  *Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995); *see also*

18 *Watison*, 668 F.3d at 1114 ("[A]llegation of a chronology of events from which

19 retaliation can be inferred is sufficient to survive dismissal.").  However, *Bruce*

20 does not create an automatic inference of retaliatory motive from timing alone as

ORDER GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY
JUDGMENT ~ 15

1    Plaintiff suggests.  Timing is but one factor that must be examined in the totality of

2    the circumstances in evaluating a motion for summary judgment.  It is Plaintiff's

3    burden to produce sufficient evidence for a reasonable jury to conclude that it is

4    more likely than not that Defendants acted with a substantial or motivating factor

5    to retaliate against Plaintiff.  *See CarePartners, LLC v. Lashwa*, 545 F.3d 867, 877

6    (9th Cir. 2008).  Unlike *Bruce*—where the plaintiff presented a combination of

7    incriminating statements, suspect timing, and questionable use of previously

8    dismissed evidence—Plaintiff's only evidence in this case is the timing of the

9    actions, and this alone is insufficient to raise a triable issue.  *See Bruce*, 351 F.3d at

10   1289; *see also Anderson*, 477 U.S. at 252 ("The mere existence of a scintilla of

11   evidence in support of the plaintiff's position will be insufficient . . . .").

12                      C.  Legitimate Penological Goal

13          In *Turner v. Safley*, the Supreme Court held that "when a prison regulation

14   impinges on inmates' constitutional rights, the regulation is valid if it is reasonably

15   related to legitimate penological interests."  *Turner v. Safley*, 482 U.S. 78, 89

16   (1987).  In determining whether a prison regulation is reasonably related to a

17   legitimate penological interest, courts examine four factors established in *Turner*:

18          (1) whether the regulation is rationally related to a legitimate and
     neutral governmental objective; (2) whether there are alternative
19   avenues that remain open to the inmates to exercise the right; (3) the
     impact that accommodating the asserted right will have on other
20   guards and prisoners, and on the allocation of prison resources; and

ORDER GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY
JUDGMENT ~ 16

(4) whether the existence of easy and obvious alternatives indicates that the regulation is an exaggerated response by prison officials.

*Ashker v. California Dept. of Corrections*, 350 F.3d 917, 922 (9th Cir. 2003) (citations omitted).  Prison officials must "put forward" a legitimate governmental interest to justify their regulation and must provide evidence that the interest proffered is the reason why the regulation was adopted or enforced.  *Walker v. Sumner*, 917 F.2d 382, 385 (9th Cir. 1990) (citations omitted).

In the retaliation context, Defendants may present evidence establishing the existence of legitimate penological reasons for the alleged retaliatory conduct.  *See Pratt*, 65 F.3d at 807 ("[W]e should 'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." (quoting *Sandin v. Conner*, 515 U.S. 472, 482 (1995)).  If Defendants establish the existence of a legitimate penological goal for the alleged adverse action, Plaintiff then bears the burden of "proving the absence of legitimate correctional goals for the conduct of which he complains."  *Pratt*, 65 F.3d at 806; *see also Overton v. Bazzetta*, 539 U.S. 126, 132 (2003) ("The burden, moreover, is not on the State to prove the validity of prison regulations but on the prisoner to disprove it.").  Absent such a showing, Plaintiff's claims cannot survive summary judgment.

ORDER GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT ~ 17

1    The Department of Corrections ("DOC") has a legitimate penological goal

2 in assuring the safety and security of its employees, their families, and of the

3 correctional facility.  *See, e.g.*, *Mauro v. Arpaio*, 188 F.3d 1054, 1059 (9th Cir.

4 1999) (". . . there is no doubt that protecting the safety of guards in general is a

5 legitimate interest . . . .").  The question presented to the Court is whether the

6 Defendants' actions under the policy were "rational," that is, whether the

7 Defendants might reasonably have thought their actions would advance their

8 interests in safety and security.  *See id.* at 1060 ("The only question that we must

9 answer is whether the defendants' judgment was 'rational,' that is, whether the

10 defendants might reasonably have thought that the policy would advance its

11 interests.").

12    The DOC has established policy concerning relationships and contact

13 between its staff and offenders.  DOC Policy 850.030; *see* ECF Nos. 8-4 at 26–30;

14 12-1.  This policy cautions DOC staff "that personal relationships between their

15 immediate family and offenders or offenders' known immediate family or

16 associates have the potential to pose conflicts and security risks at work and will be

17 avoided when known."  DOC Policy 850.030 Directive II(C).  Defendant Randall

18 Smith articulated the potential conflicts and risks:

19         Offenders who obtain personal information of a staff member, or have
          a relationship with the staff member or their family, can use the
20         information and attempt to strong-arm, threaten, or coerce the staff
          member to perform unauthorized activities or provide special

ORDER GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY
JUDGMENT ~ 18

treatment.  Offenders can also use personal information to harass a staff member's family or direct non-incarcerated individuals to do so. Another concern is that offenders may share personal information about staff members with other offenders.

ECF No. 21 at ¶ 4.

In light of these risks, correctional employees are required to report any inmate relationship or contact to their Appointing Authority on a "Report of Contact/Relationship with an Offender" form.  DOC Policy 850.030 Directive III(A)–(C).  "The Appointing Authority has discretion to reassign an employee or offender on a case-by-case basis to avoid potential conflicts."  DOC Policy 850.030. Directive III(C)(1).  "Efforts to reassign the offender may be made before reassigning the employee."  DOC Policy 850.030 Directive III(C)(1)(b).

DOC policy governing offender employment also states that offenders may be suspended from their employment "based on security concerns."  DOC Policy 710.400 Directive VII(A); *see* ECF No. 12-2.  A CRCC Operational Memorandum on Work Programs for Offenders articulates the procedures for dealing with offenders in work programs.  CRCC Op. Mem. 700.000; *see* ECF NO. 12-3. Under this policy, supervisors "may recommend administrative reassignment, termination, or layoff of an offender . . . ."  CRCC Op. Mem. Procedure IV(H). Offenders may appeal decisions to terminate work assignments.  CRCC Op. Mem. IV(I).  Defendant Randall Smith states:

ORDER GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT ~ 19

> If an offender obtains personal information regarding a staff member who works in Correctional Industries with the offender, one way under DOC Policy 710.400 and CRCC Operational Memorandum 700.000 to address the safety and security concerns . . . is to unassign the offender from the Correctional Industries position. This helps limit the offender's contact with the staff member and protect the safety and security of the staff member immediately and does not preclude additional protective action under DOC Policy 850.030.

ECF No. 21 at ¶ 8.

It is undisputed that Plaintiff's cousin and Defendant Linda Smith's son are close friends, and that Plaintiff's cousin has knowledge of personal information about Defendant Linda Smith. Whether Defendant Linda Smith made inappropriate comments to an inmate on January 13, 2013, and whether she may have confronted Plaintiff about his complaint has no bearing on these facts or on the legitimate concerns that Plaintiff may obtain personal information about Defendant Linda Smith that would compromise her safety and security as well as that of her family and of the facility. The Court concludes, based upon the articulated policies and undisputed facts, that Defendant Randall Smith's decision to unassign Plaintiff from the Laundry was rationally related to advancing legitimate penological goals. Plaintiff has presented no evidence to the contrary.

Furthermore, Superintendent Uttecht was granted authority to segregate and transfer Plaintiff as the Appointing Authority pursuant to Policy 850.030 Directive III(C)(1). The Superintendent was informed about concerns that the close

ORDER GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT ~ 20

relationship between Plaintiff's cousin and Defendant Linda Smith's son could create a serious problem. Superintendent Uttecht chose to reassign Plaintiff to avoid the potential conflict. Superintendent Uttecht also learned that Plaintiff was sharing information he had learned in the course of this lawsuit, including potential personal information about Defendant Linda Smith he obtained through public disclosure requests. ECF Nos. 3 at ¶ 14; 21 at ¶ 24. This heightened the concerns that Plaintiff was in possession of and was actively sharing information which could create serious safety and security problems. The Superintendent's decision to transfer Plaintiff and to segregate him until the transfer occurred in order to prevent the spread of that information was rationally related to advancing legitimate penological goals. Plaintiff has presented no evidence to the contrary.

Plaintiff bears the ultimate burden of "proving the absence of legitimate correctional goals for the conduct of which he complains." *Pratt*, 65 F.3d at 806. Plaintiff has presented no evidence to rebut the Defendants' showing that legitimate penological concerns for the safety and security of staff, their family, and the facility motivated Plaintiff's unassignment from the Laundry, his transfer to another facility, and his segregation. Defendants did no clearly communicate to Plaintiff the reasons for their actions and Plaintiff's frustration with the lack of communication is understandable. However, because there is no evidence in the record from which a reasonable factfinder could conclude that Defendants were not

ORDER GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT ~ 21

acting to further legitimate penological goals Defendants are entitled to summary judgment.[6]

**ACCORDINGLY, IT IS HEREBY ORDERED:**

    1) Plaintiff's Motion for Summary Judgment (ECF No. 6) is **DENIED**.

    2) Defendants' Response and Cross-Motion for Summary Judgment (ECF No. 9) is **GRANTED**.

    The District Court Executive is hereby directed to enter this Order, provide copies to Plaintiff and Defendants' counsel, enter **JUDGMENT** for Defendants on all claims, and **CLOSE** the file.

    **DATED** April 24, 2015.



THOMAS O. RICE
United States District Judge

---

[6] In light of this ruling, the Court need not address whether the Defendants are also entitled to qualified immunity.

ORDER GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT ~ 22